1
2
3
4
5
6
7

**E-Filed 5/13/2009**

8

### IN THE UNITED STATES DISTRICT COURT

9

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

### SAN JOSE DIVISION

11

12  ADMIRAL INSURANCE COMPANY and OLD
    REPUBLIC INSURANCE COMPANY,

13                              Plaintiff,

14            v.

15

16  SONICBLUE, INC., PIF high Yield Fund II,
    formerly known as WM Trust High Yield Fund;

17  PIF Income Fund, formerly known as WM Trust
    Income Fund; PVC Income Account, formerly

18  known as WM Variable Trust Income Fund; Tonga
    Partners, L.P.; Anegada Master Fund; Ltd.;

19  Cuttyhunk Fund, Ltd.; Cannell Capital, L.L.C.; and
    Nebo Investment Fund,

20                              Defendant.

21

Case Number C07-4185 JF

**CORRECTED** ORDER[1] RE CROSS-MOTIONS FOR SUMMARY JUDGMENT; REQUEST FOR SUPPLEMENTAL BRIEFING

22

### I. BACKGROUND

23

24      Plaintiff, Admiral Insurance ("Admiral"), commenced the instant insurance coverage

action against Defendants, SONICblue, et al ("SONICblue"), as an adversary proceeding in

25

SONICblue's bankruptcy. This Court subsequently withdrew the reference and assumed

26

27

[1] This disposition is not designated for publication in the official reports.

28

1  jurisdiction.  The underlying dispute concerns two groups of creditors. The 2003 Noteholders are

2  holders of 5 3/4% Convertible Subordinated Notes that were due on or about September 30,

3  2003. The 2005 Noteholders are holders of the 7 3/4% Secured Senior Subordinated Convertible

4  Debentures that were issued by SONICblue as of April 22, 2002 and due in 2005.

5      Admiral asserts that it had no obligation to provide coverage for the claims of either

6  group of Noteholders against SONICblue's former directors and officers for breach of fiduciary

7  duty.  The underlying litigation involving these claims was settled by an agreement among the

8  Noteholders, directors and officers, and Admiral.  As part of that settlement, the directors and

9  officers assigned all of their rights under the policy to the Noteholders, and the Noteholders were

10  substituted for the directors and officers as parties in the instant case.

11      The issue presented by the present cross-motions is whether certain letters sent by the

12  Noteholders to SONICblue regarding the company's impending insolvency and the attendant

13  fiduciary duties of the directors and officers constituted claims, such that SONICblue should

14  have reported the letters to Admiral either prior to or during the term of the subject insurance

15  policy (the "D&O Policy"). SONICblue was insured by Lloyd's of London from December 16,

16  2001 to December 16, 2002, and by Admiral from December 16, 2002 to December 16, 2003.

17  **II.  LEGAL STANDARD**

18      A motion for summary judgment should be granted if there is no genuine issue of

19  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

20  56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

21  the initial burden of informing the Court of the basis for the motion and identifying the portions

22  of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

23  demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

24  317, 323 (1986).

25      If the moving party meets this initial burden, the burden shifts to the non-moving party to

26  present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

27  *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

28

2

1  evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

2  party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

3  *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

4      The interpretation of an insurance policy is a question of law for the court. *Blue Ridge*

5  *Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir. 1998). Where the effect of the policy is clear,

6  the question of whether there is substantial evidence that a policy condition has been met is one

7  of fact. *Phoenix Ins. Co. v. Sukut Construction Co.,* 136 Cal.App.3d 673, 677 (1982).

8                              **III. DISCUSSION**

9      1.    Letters from 2003 Noteholders

10      The D&O Policy defines a "claim" as "a written demand for monetary or non-monetary

11  relief." The policy states that claims must be made during the "Policy Period or the Extended

12  Reporting Period." It is undisputed that the 2003 Noteholders sent letters to SONICblue as early

13  as July 11, 2002 expressing concerns about the company's financial state and future prospects.

14  The letters focus on the decision of the directors and officers to engage in private financing

15  through the issuance of $75 million in aggregate principal amount of its 7 3/4 % Secured Senior

16  Subordinated Convertible Debenture due in 2005 (the "April 2002 transaction"). The letter dated

17  July 11, 2002  discussed the "concern" of the 2003 Noteholders regarding this decision, the fact

18  that they were  "at a loss to understand" how the decision was consistent with fiduciary

19  obligations, and their "fear" that SONICblue would not pay off the 2003 debentures. The letter

20  closed by reminding SONICblue's counsel that "all debt obligations of the Company must be

21  satisfied in full" and requesting that counsel contact the 2003 Noteholders to assist them in

22  evaluating their "alternatives."

23      This letter did not constitute a claim. Rather, it expresses the concerns of the 2003

24  Noteholders and reaches out to SONICblue's counsel to discuss a path forward. It does not

25  request or even allude to the possibility of damages or non-monetary relief, but instead reminds

26  SONICblue of what the 2003 Noteholders expect of the company's directors and officers. The

27  Court concludes as a matter of law that this letter did not have to be reported to Admiral as an

28

                                        3

1  alleged or pending claim during the risk assessment period prior to the issuance of the subject

2  policy

3      On October 23, 2002, the 2003 Noteholders sent a second letter to SONICblue.  As they

4  had previously,  the 2003 Noteholders expressed concern about the company's actions, stating

5  that they were "not assured" and "perplexed" by the Company's actions.  Like the letter dated

6  July 11, 2002, this second letter "request[ed]" collaboration with SONICblue, either through

7  negotiations with a steering committee, the costs of which would be paid by SONICblue, or

8  through a meeting at which the parties could discuss alternatives. The letter unambiguously did

9  not request monetary compensation or any other specific remedy.  As a matter of law, this letter

10  did not constitute a claim, nor was SONICblue required to report it to Admiral during the risk

11  assessment period as a potential or pending claim.

12      On December 12, 2003, the 2003 Noteholders sent two separate letters to SONICblue.

13  These letters were sent and received within the coverage period of the Admiral policy ending

14  December 16, 2003.  Both letters clearly presented claims, and both were referred to as demand

15  letters in the "written notice of Claims and of facts, circumstances and situations which may

16  reasonably be expected to give rise to a Claim being made" sent to Admiral on behalf of

17  SONICblue three days later.  Like the previous letters, the letters dated December 12, 2003

18  focused on the April 2002 transaction, but for the first time there were specific demands for

19  monetary relief.

20      Under the D&O policy:

21          all Claims based upon...the same Wrongful Act...shall be considered a single
            Claim. Each such single Claim shall be deemed to have been made on...[either]
22          when the earliest Claim arising out of such Wrongful Act...was first made, or
            when notice pursuant to section VII. B. Of a fact, circumstance, or situation giving
23          rise to such Claim is given [whichever is earlier].

24  Policy Section VII.C.  However, because neither the letter dated July 11, 2002 nor the letter

25  dated October 23, 2002 constituted a claim for which notice was required or given, the claims

26  asserted in the letter dated December 12, 2003 do not relate back.  Accordingly, the date on

27  which those claims are deemed to have been made is December 12, 2003, which is within the

28

4

policy period.

2.    <u>Letters from 2005 Noteholders</u>

The first letter from the 2005 Noteholders was sent on November 14, 2002, prior to the commencement of the Admiral policy period.  Although this letter also raised general concerns about the financial condition of SONICblue, it did not make reference to the April 2002 transaction or question the judgment of the directors and officers in entering into that transaction. Rather, its subject was the "continued operation of the Company's operating businesses...in light of the Company's recent financial results, [product line performance], and sale of ...shares in UMC." The principal issue addressed by the 2005 Noteholders was not corporate governance but simply was whether they would receive the expected return on their investment. Unrelated investors, with unique investment objectives in situations in which "importantly, the Wrongful Acts alleged by the two clients [a]re different" have been deemed unrelated. *Financial Mgmt, Advisors, LLC. v. American Int'l Specialty Lines Ins. Co.,* 506 F.3d 922, 925 (9th Cir. 2007).  In the instant case, it appears that the two classes of noteholders had significantly different objectives.

In their letter dated November 14, 2002, the 2005 Noteholders expressly  "reserve[d] all their claims and rights with respect to the careless and inappropriate sales of UMC Shares that have already occurred." In light of this language, it was unreasonable for SONICblue to believe that the matters discussed in the letter could not "reasonably be expected to give rise to a Claim," and thus notice should have been provided to Admiral during the risk assessment period.  Indeed, the next letter from the 2005 Noteholders, dated within the Admiral policy period on January 15, 2003, expressly "reiterate[d] all of the concerns set forth in their letter dated November 14, 2002." However, because neither letter contained explicit "demands" for compensation or relief, neither had yet given rise to claim or can be characterized as a "claim" per se.

3.    <u>SWIB Letter</u>

A letter dated June 27, 2002, to SONICblue from the State of Wisconsin Investment Board (SWIB), a stranger to both the instant dispute and the underlying litigation, clearly

1  described an alleged breach of fiduciary duty and contained a demand that SONICblue's

2  directors and officers take action to cure the breach.  Among other things, SWIB demanded

3  access to the company's books pursuant to Delaware General Corporation Law Section 220 for

4  the express purpose of "evaluat[ing] the performance of management and investigat[ing]

5  possible waste, mismanagement or breaches of fiduciary duties in connection with the recent

6  offering of the [April 2002 transaction]."  It is undisputed that SONICblue did not give notice of

7  this letter to Admiral during the risk assessment period.

8        4.   Admiral's Delay in Objecting to Late Notice

9        Notice of the underlying claims and facts that reasonably would be expected to give rise

10  claims was given to Admiral on December 15, 2003, a date within the Admiral policy period.

11  The notice included references to all of the previous communications between the 2003 and 2005

12  Noteholders and SONICblue.

13        Timeliness of notice turns upon when SONICblue learned of matters that reasonably

14  could be expected to give rise to claims. Under the California Insurance Code, "delay in the

15  presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he

16  omits to make objection promptly and specifically on that ground." Cal. Ins. Code § 554. In the

17  instant case, Admiral first objected to the timeliness of notice in June 2005, approximately

18  eighteen months after SONICblue gave notice of the Noteholders' claims on December 15, 2003.

19  The objection appears to be untimely as a matter of Ninth Circuit case law. *Nat'l Am. Ins. Co. v.*

20  *Certain Underwriters at Lloyd's London*, 93 F.3d 529 (9th Cir. 1996) (twenty-four month delay);

21  *Ellgass v. Brotherhood of R.R. Trainmen Ins. Dep't*, 342 F.2d 1, 3 (9th Cir. 1965) (twenty month

22  delay).

23              **IV. ORDER**

24        Based on the foregoing discussion, the Court concludes that the following determinations

25  may be made as a matter of law:

26        1.  The claims of the 2003 Noteholders are unrelated to the claims of the 2005

27  Noteholders and of the SWIB;

28

Case No. C 07-4185
**CORRECTED** ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT; REQUEST FOR SUPPLEMENTAL
BRIEFING

2.  The first letters from the 2003 Noteholders that assert a claim within the meaning of the Admiral policy are dated December 12, 2003, a date within the policy period.  Based solely on the contents of the letters themselves, and without reference to the existence of other, unrelated claims, SONICblue had no duty to notify Admiral of the letters from the 2003 Noteholders prior to that date, nor do the claims set forth in the letters dated December 12, 2003 relate back to an earlier date.

3.  The letter from the 2005 Noteholders dated November 14, 2002, set forth facts that reasonably could have been expected to give rise to a claim, and thus SONICblue should have notified Admiral of this letter during the risk assessment period prior to the inception of the Admiral policy.  If the subsequent letter from the 2005 Noteholders dated January 15, 2003, a date within the Admiral policy period, were deemed to constitute a claim, it would relate back to November 14, 2002; however, neither letter constitutes a claim.

4.  The letter dated June 27, 2002 from the SWIB set forth facts that reasonably could have been expected to give rise to a claim, and SONICblue should have notified Admiral of this letter during the risk assessment period prior to the inception of the Admiral policy.

## V.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that within fifteen (15) days of the date this order is filed, counsel shall file a supplemental brief, not to exceed ten (10) pages in length, setting forth their respective positions as to the appropriate disposition of this action in light of the foregoing determinations.

DATED: May 13, 2009

_____
JEREMY FOGEL
United States District Judge

7

1   This Order has been served upon the following persons:

2   Cecily A. Dumas     cdumas@friedumspring.com

3   Daniel Tranen     daniel.tranen@wilsonelser.com

4   Dennis J Connolly     dennis.connolly@alston.com

5   Glenn Philip Zwang     gzwang@bztm.com, pbrown@bztm.com

6   Joanne Madden     joanne.madden@wilsonelser.com

7   Kerry L. Duffy     kduffy@bztm.com

8   Louis Harrison Castoria     louis.castoria@wilsonelser.com,
    pamela.moran@wilsonelser.com
9
    Michael David Abraham     mabraham@bztm.com
10
    Reina Grace Minoya     minoyar@wemed.com
11
    Robert H. Bunzel     rbunzel@bztm.com, bsage@bztm.com, dsanchez@bztm.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-4185
**CORRECTED** ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT; REQUEST FOR SUPPLEMENTAL
BRIEFING