1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 8/14/2009**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

ADMIRAL INSURANCE COMPANY and OLD REPUBLIC INSURANCE COMPANY,

Plaintiffs,

v.

SONICBLUE, INC., PIF high Yield Fund II, formerly known as WM Trust High Yield Fund; PIF Income Fund, formerly known as WM Trust Income Fund; PVC Income Account, formerly known as WM Variable Trust Income Fund; Tonga Partners, L.P.; Anegada Master Fund; Ltd.; Cuttyhunk Fund, Ltd.; Cannell Capital, L.L.C.; and Nebo Investment Fund,

Defendants and Counter-Claimants.

Case Number C07-4185 JF

ORDER[1] (1) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

[re: doc. nos. 21 & 26]

Plaintiff Admiral Insurance Company ("Admiral")[2] commenced the instant insurance coverage action against Defendant SONICblue, Inc. ("SONICblue") and its directors and officers (the "D&O Defendants) as an adversary proceeding in SONICblue's bankruptcy. Defendants and

---

[1] This disposition is not designated for publication in the official reports.

[2] Plaintiff Old Republic Insurance Company was dismissed from the instant action on July 12, 2007.

Counter-claimants PIF High Yield Fund II, formerly known as WM Trust High Yield Fund; PIF Income Fund, formerly known as WM Trust Income Fund; PVC Income Account, formerly known as WM Variable Trust Income Fund; Tonga Partners, L.P.; Anegada Master Fund, Ltd.; Cuttyhunk Fund, Ltd.; Cannell Capital, L.L.C.; and Nebo Investment Fund (collectively the "Bondholders") replaced the officers and directors pursuant to a separate settlement agreement. On June 20, 2008, this Court withdrew the reference from the bankruptcy court and assumed jurisdiction.

Admiral and the Bondholders subsequently filed cross-motions for summary judgment with respect to the coverage issue. The Court has considered the moving and responding papers filed by the parties, the oral arguments presented at the hearing on April 10, 2009, and the supplemental briefing requested by the Court on May 11, 2009. For the reasons set forth below, Admiral's motion for summary judgment will be granted in part. Defendants' cross-motion for partial summary judgment will be denied.

## I. BACKGROUND

A. Procedural History Prior to Withdrawal of Reference

The instant action arises from a dispute between the D&O Defendants and SONICblue's creditors. In 1996, SONICblue privately placed $103 million in convertible long-term debt due in 2003 with a group of investors (the "2003 Noteholders"). In April 2002, SONICblue privately placed an additional $75 million in new secured senior subordinated convertible debentures due in 2005 with a separate group of investors (the "2005 Noteholders"). The 2002 debt placement did not relieve SONICblue's financial problems, and on March 24, 2003, the company filed for bankruptcy.

On April 21, 2005, the Bondholders brought an action for breach of fiduciary duty and constructive fraud ("the Underlying Action") against the D&O Defendants in the Santa Clara Superior Court. On June 14, 2005, the D&O Defendants removed the Underlying Action to the Bankruptcy Court, asserting that the Underlying Action should be heard as an adversary proceeding in SONICblue's pending Chapter 11 bankruptcy case. Following removal, the D&O

1   Defendants tendered the Underlying Action to Admiral for defense and indemnity under liability

2   policies issued by Admiral to SONICblue (the "D&O Policy").[3]  On December 23, 2005,

3   Admiral responded by filing the instant coverage action against SONICblue and D&O

4   Defendants as an adversary proceeding in the SONICblue bankruptcy case.  Admiral seeks a

5   declaration that it has no duty to defend or indemnify the D&O Defendants in the Underlying

6   Action because: (1) the claim predates the inception of the D&O Policy; (2) D&O Defendants

7   made material misrepresentations during the policy application process; (3) the known loss

8   doctrine precludes coverage; and (4) notice of the claim was untimely.

9        On March 14, 2007, the Bondholders, the D&O Defendants, and Admiral entered into a

10   settlement agreement to resolve the Underlying Action.  Pursuant to the settlement, the parties

11   stipulated to an amount payable by Admiral to the Bondholders under Admiral's insurance policy

12   should Admiral not prevail in the instant coverage action.  The D&O Defendants assigned all of

13   their rights under the policy to the Bondholders, and the Bondholders stepped into the shoes of

14   the D&O Defendants.

15        B.  Procedural History after Withdrawal

16        After this Court withdrew the reference from the bankruptcy proceeding, the parties filed

17   cross-motions for summary judgment.  The issue presented was whether certain letters sent by

18   the 2003 and 2005 Noteholders to SONICblue regarding the company's impending insolvency

19   and the attendant fiduciary duties of the directors and officers constituted claims, such that

20   SONICblue should have reported the letters to Admiral either prior to or during the term of the

21   D&O Policy.  Also at issue was a letter sent by a third-party investor, the State of Wisconsin

22   Investment Board (SWIB), prior to the effective date of the D&O Policy at issue.  The content of

23   these letters is detailed in the Court's order dated May 13, 2009.  That order set forth the

24   following conclusions of law:

25        1.  The claims of the 2003 Noteholders are unrelated to the claims

26   ────────────────

27   [3] SONICblue was insured by Lloyd's of London from December 16, 2001 to December
    16, 2002, and by Admiral from December 16, 2002 to December 16, 2003.

28

Case No. C 07-4185
ORDER GRANTING IN PART PLAINTIFF's MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC1)

of the 2005 Noteholders and of the SWIB;

2.  The first letters from the 2003 Noteholders that assert a claim within the meaning of the Admiral policy are dated December 12, 2003, a date within the policy period.  Based solely on the contents of the letters themselves, and without reference to the existence of other, unrelated claims, SONICblue had no duty to notify Admiral of the letters from the 2003 Noteholders prior to that date, nor do the claims set forth in the letters dated December 12, 2003 relate back to an earlier date.

3.  The letter from the 2005 Noteholders dated November 14, 2002, set forth facts that reasonably could have been expected to give rise to a claim, and thus SONICblue should have notified Admiral of this letter during the risk assessment period prior to the inception of the Admiral policy.  If the subsequent letter from the 2005 Noteholders dated January 15, 2003, a date within the Admiral policy period, were deemed to constitute a claim, it would relate back to November 14, 2002; however, neither letter constitutes a claim.

4.  The letter dated June 27, 2002 from the SWIB set forth facts that reasonably could have been expected to give rise to a claim, and SONICblue should have notified Admiral of this letter during the risk assessment period prior to the inception of the Admiral policy.

Order at 6-7, May 13, 2009.[4]  The Court then requested that the parties file supplemental briefing as to the appropriate disposition of the cross-motions in light of the above conclusions.  The matter now is briefed fully and ripe for adjudication.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden shifts to the non-

---

[4] The Court also concluded that Admiral's allegation of untimely notice was barred by its own delay in objecting to Defendants' tender of the underlying claims.  Order at 6, May 13, 2009.

Case No. C 07-4185
ORDER GRANTING IN PART PLAINTIFF's MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC1)

1    moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ.

2    P. 56(e); *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party

3    presents evidence from which a reasonable jury, viewing the evidence in the light most favorable

4    to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-

5    49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

6         The interpretation of an insurance policy is a question of law for the court. *Blue Ridge*

7    *Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir. 1998). Where the effect of the policy is

8    clear, the question of whether there is substantial evidence that a policy condition has been met is

9    one of fact. *Phoenix Ins. Co. v. Sukut Constr. Co.,* 136 Cal. App. 3d 673, 677 (1982).

10                                    **III.  DISCUSSION**

11   A.  Settlement Agreement and SWIB Letter

12        The Bondholders' argue that the settlement agreement in the Underlying Action precludes

13   Admiral from invoking the SWIB letter as a basis to deny coverage.  The settlement agreement

14   recited in relevant part:

15              The claims and defenses in the Coverage Action between Plaintiffs
               and Admiral shall be limited to a) the claims and defenses
16              previously existing in the Coverage Action as set forth in the
               pleadings at the time this Agreement is executed, b) Admiral's to
17              be filed answer to the O/D Defendants' counterclaims, and c) the
               request by Admiral and Plaintiffs that the court determine the
18              Admiral Payment, if any, in connection with this settlement
               agreement (sub-sections (a) through (c) collectively constituting
19              the "Coverage Action").  There shall be no new counterclaims or
               cross-actions, or any other actions against the O/D Defendants in
20              any forum prior to entry of a final judgment as set forth in
               paragraph 10 hereof.
21
22   Duffy Decl. Ex. C at Ex. A ¶ 12.  The Bondholders contend that the parties' bargain at the time

23   of settlement did not contemplate any potential coverage issues raised by the SWIB letter and

24   that Admiral cannot raise those issues now as a separate basis upon which to deny coverage.  In

25   response, Admiral contends that the Bondholders are misrepresenting the scope of the settlement

26   agreement, and that the SWIB letter merely is additional evidence supporting its allegation that

27   there were pre-policy claims that SONICblue should have reported but failed to report.

28

                                         5

1   "The interpretation of a settlement agreement, like that of a contract, is a question of

2   law." *Pekarsky v. Ariyoshi*, 695 F.2d 352, 354 (9th Cir. 1982).[5]  Interpretation of a contract must

3   conform with the "mutual intent of the parties at the time it was formed." *Cook Inc. v.*

4   *Medtronic, Inc.*, No. C 06-333, 2006 WL 1806159, at *4 (N.D. Cal. June 29, 2006).  *See also*

5   *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821 (1990); Cal. Civ. Code § 1636.  The intent

6   analysis should focus "on the usual and ordinary meaning of the language and the circumstances

7   under which the agreement was made." *Cook*, 2006 WL 1806159, at *4 (quoting *Powers v.*

8   *Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1101, 1111 (1997)).

9           It is undisputed that the operative complaint does not mention the SWIB letter.[6]  In

10   addition, neither the Bondholders nor Admiral were aware of the SWIB letter when they entered

11   into the settlement agreement, as it was produced by counsel for SONICblue during discovery in

12   the instant action.  The complaint does contain detailed allegations with respect to the

13   Noteholders' letters, specifically alleging that the "July 11, 2002 Demand Letter, the October 23,

14   2002 Demand Letter, the November 14, 2002 Demand Letter…the December 12, 2002 Letter

15   and the Noteholder Lawsuit all constitute one Claim under the Policy, 'deemed to have been

16   made…when the earliest Claim arising out of such Wrongful Act or Related Wrongful Acts was

17   first made,' or July 11, 2002."  Compl. ¶ 88.  Accordingly, at the time of the settlement

18   agreement, the instant coverage action only contemplated issues arising out of the Noteholder

19   Lawsuit, not any potential or actual claims that were made by third parties such as SWIB.  The

20   settlement agreement thus bars Admiral from using the SWIB letter as a basis to deny coverage.

21   *See also Fin. Mgmt, Advisors, LLC. v. Am. Int'l Specialty Lines Ins. Co.,* 506 F.3d 922, 925 (9th

22

23           [5] The settlement agreement is governed by California law.  *See* Duffy Decl. Ex. C at 4.

24           [6] The settlement agreement contains an integration clause, *see* Duffy Decl. Ex. C at 4, and

25   thus "the parol evidence rule precludes the admission of evidence of the parties' prior or
     contemporaneous oral statements to contradict the terms of the writing, although parol evidence

26   is always admissible to interpret the written agreement."  *Esbensen v. Userware Internat., Inc*.,
     11 Cal. App.4th 631, 636-37 (1992).  The content of the operative complaint is not parol

27   evidence because the pleading is incorporated by reference into Exhibit A to the settlement
     agreement.

28

1  Cir. 2007) (claims are unrelated where there are "unrelated investors, with unique investment

2  objectives.").  Otherwise, the language limiting claims and defenses to those existing in the

3  complaint at the time of the settlement agreement would be meaningless, because Admiral would

4  then be free to search for additional justifications (including the SWIB letter) for denying

5  coverage.  In addition, pursuant to the settlement agreement each party waived the protections

6  contained in Cal. Civ. Code § 1542, which states that "[a] general release does not extend to

7  claims which the creditor does not know or suspect to exist in his or her favor at the time of

8  executing the release, which if known by him or her must have materially affected his or her

9  settlement with the debtor."  In other words, the parties agreed that unknown claims could not be

10  raised upon discovery of new facts.  On the other hand, had additional correspondence from the

11  *Noteholders* been discovered, such evidence could have been presented to support the denial of

12  coverage.

13       B.  2005 Noteholder Letters

14       The Court previously concluded that because "neither [of the 2005 Noteholder letters]

15  contained explicit 'demands' for compensation or relief, neither had yet given rise to claim or can

16  be characterized as a 'claim' per se."  Order at 5, May 13, 2009.  The Bondholders now argue

17  that because SONICblue's application for the D&O policy did not require disclosure of *potential*

18  claims, it is irrelevant whether it was unreasonable to not disclose the November 14, 2002

19  communication because any such omission was immaterial to the underwriting process.  In

20  response, Admiral has presented evidence that had it known of the November 14 letter it would

21  not have issued the policy in the first place, or at the very least it would have issued the policy on

22  different terms, namely by including an exclusion of coverage with respect to any claims arising

23  out of the allegations contained in the letter.  *See* Haltman Decl. ¶¶ 15-16.

24       The November 14 letter stated *inter alia* that "[c]ontinuing the operations of the

25  Consumer Electronics Business using proceeds generated from sales of UMC Shares is

26  deepening Sonic's insolvency.  That the directors and officers are permitting this to occur

27  breaches their fiduciary duties to Sonic and Sonic's creditors."  Compl. ¶ 53 and Ex. 8 at 1.  The

28

7

1    communication stated further that the 2005 Noteholders "will hold the [D&O Defendants]

2    responsible for the value of all UMC shares sold to facilitate imprudent additional investments in

3    the Consumer Electronics Business, including any subsequent increase in the value of UMC

4    shares that are sold." *Id*. ¶ 56 and Ex. 8 at 3.  As a footnote to this statement, the letter also

5    confirmed that the 2005 Noteholders "reserve all of their claims and rights with respect to the

6    careless and inappropriate sales of UMC Shares that have already occurred." *Id*.

7         Counts III and V of the complaint seek reformation or rescission respectively, and both

8    allege that the policy application "required the Insured to disclose all written demands for money

9    or services against the [D&O Defendants], and all those against SONICblue" and that Defendants

10   breached that obligation by failing to report any of the Noteholder letters.  Compl. ¶¶ 100, 110.

11   Those same claims for relief also allege that Admiral "reasonably relied on the

12   misrepresentations and/or omissions" in the application process when it issued the policy, *id*. at

13   ¶¶ 101, 111, and that "[s]uch non-disclosures were material to ADMIRAL, and ADMIRAL

14   would not have issued the Primary Policy, or would have done so on different terms and

15   conditions, had it known about any of those letters." *Id*. ¶ 102, 112.  The application for the

16   insurance policy inquired whether in the prior five years the D&O Defendants or SONICblue had

17   been named as defendants in any litigation.  *See* Compl. Ex. 3 at 2.  The application also

18   requested information related to "any demands" involving allegations of federal or state

19   securities law violations.  *See id.*  The application also requested any information relating to "any

20   other written demands for money or services." *Id.*  In contrast, the policy as issued required that

21   the insured report any "circumstances which could give rise to a claim" during the policy period.

22   *Id*. Ex. 2 at 4.

23        Under California law, "[m]ateriality is to be determined not by the event, but solely by the

24   probable and reasonable influence of the facts upon the party to whom the communication is due,

25   in forming his estimate of the disadvantages of the proposed contract, or in making his

26   inquiries." Cal. Ins. Code § 334.  *See also Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536

27   (9th Cir. 2001) ("Materiality is determined solely by the probable and reasonable effect which

28

                                        8

1   truthful answers would have had upon the insurer.") (quoting *Thompson v. Occidental Life Ins.*

2   *Co.*, 9 Cal. 3d 904, 915 (1973)).  Had the application requested information with respect to

3   events that may be expected to give rise to a claim (as was required by the actual policy), there

4   would be no question that the failure to report the November 14, 2005 letter constituted a

5   material omission.  *See Fed. Ins. Co. v. Curon Med., Inc.*, No. C-03-1356, 2004 WL 2418318, at

6   *5-6 (N.D. Cal. Oct. 28, 2004) (failure to disclose constituted material misrepresentation where

7   insurance application required "disclosure of events that 'might reasonably be expected to give

8   rise to a claim.'") (citation omitted).  *See also Freeman*, 253 F.3d at 536 ("The fact that the

9   insurer has demanded answers to specific questions in an application for insurance is in itself

10  usually sufficient to establish materiality as a matter of law.") (quoting *Thompson*, 9 Cal. 3d at

11  915).  Accordingly, the dispositive question is whether the November 14, 2002 letter reasonably

12  could have been characterized as a "demand" as that term was used in the policy application.

13       "In the context of insurance contracts, the court must adopt the clear and ordinary

14  meaning of the provision's language."  *Curon*, 2004 WL 2418318, at *5.  *See also Bank of the*

15  *West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) ("While insurance contracts have special

16  features, they are still contracts to which the ordinary rules of contractual interpretation apply.").

17  While the policy application did not define "demand," it did request information related to any

18  filed pleadings, or any other "demand" that set forth allegations of federal or state law securities

19  violations as well as any miscellaneous "demands for money or services."  In addition, the issued

20  policy defined a "claim" as meaning:

21       1.   a written demand for monetary or non-monetary relief, or

22       2.   a civil, criminal administrative or arbitration proceeding for
            monetary or non-monetary relief which is commenced by:

23

24            a.   service of a complaint or similar pleading, or

25            b.   return of an indictment (in the case of a criminal
                 proceeding), or

26            c.   receipt or filing of a notice of charges.

27

28
                                        9

Case No. C 07-4185
ORDER GRANTING IN PART PLAINTIFF's MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC1)

1   Compl. Ex. 1 at 5.[7]  Accordingly, as used in the policy application the term "demand" appears to

2   contemplate formal litigation filings as well as any demands related to alleged violations of

3   federal or state law, or written communications demanding a course of action based on the

4   author's legal rights.[8]

5         The November 14, 2002 letter alleged a present breach by the D&O Defendants of their

6   fiduciary duties and "request[ed] that Sonic immediately cease all non-self sustaining operations,

7   including any of the Consumer Electronic Businesses that do not operate on a stand alone basis."

8   Comp. Ex. 8 at 5.  As the Court has ruled previously, the November 14 letter was not a claim per

9   se but it did "set forth facts that reasonably could have been expected to give rise to a claim."

10  The letter did not constitute a claim per se because such an event would require a complaint for

11  damages or other relief in the form of a pleading filed with a court or other entity, or notice that

12  such a filing was imminent.  However, the November 14 letter was a demand as contemplated by

13  the policy application.  The communication was not a mere "expression of dissatisfaction," but

14  rather it alleged that a right had been violated and stated that its purpose was to notify Defendants

15  that litigation might ensue absent rectifying action.  *See Westrec*, 163 Cal. App. 4th at 1392

16  ("The ordinary meaning of a 'demand' as used in this context is a request for something under an

17  assertion of right or an insistence on some course of action.").[9]

18

19       [7] In the excess policy issued by Old Republic, a "claim" was defined more narrowly as it
20  only contemplated formal litigation filings or "a written demand for monetary damages." *See*
    Compl. Ex. 2 at 7.

21
22       [8] Applicable case law also informs the instant analysis with respect to the plain and
    ordinary meaning of "demand."  A claim or demand is not "[a] mere request for an explanation,
23  expression of dissatisfaction, or lodging of a grievance." *Westrec Marina Mgmt., Inc. v.
    Arrowood Indem. Co.*, 163 Cal. App. 4th 1387, 1392 (2008).  *See also Curon*, 2004 WL
24  2418318, at *5 ("A claim is a formal demand for recompense, as opposed to mere complaints or
    expressions of dissatisfaction."); *Abifadel v. Cigna Ins. Co.*, 8 Cal. App. 4th 145, 160 (1992) ("A
25  claim is the assertion of a liability of the party, demanding that the party perform some service or
26  pay some money.").

27       [9] The complaint filed by SONICblue's bankruptcy trustee against SONICblue's counsel
28  during the period in question alleges that the communication by the 2005 Noteholders prior to the

10

1    Under California law, "[e]ach party to a contract of insurance shall communicate to the

2    other, in good faith, all facts within his knowledge which are or which he believes to be material

3    to the contract and as to which he makes no warranty, and which the other has not the means of

4    ascertaining."  Cal. Ins. Code § 332.  It is implausible to suggest that the letters from the 2005

5    Noteholders would not be considered material, as they contained serious allegations questioned

6    SONICBlue's financial viability.  *See Jaunich v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,

7    647 F. Supp. 209, 211 (N.D. Cal. 1986) ("the financial health of a company as well as the

8    existence of circumstances that can lead to litigation are material to an insurer's decision to issue

9    a directors and officers' liability policy.").

10    "When a policyholder conceals or misrepresents a material fact on an insurance

11    application, the insurer is entitled to rescind the policy."  *LA Sound USA, Inc. v. St. Paul Fire &*

12    *Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1266 (2007).  Accordingly, Admiral's motion for

13    summary judgment on its claim for rescission will be granted.

14                                                      **IV. ORDER**

15    Good cause therefor appearing, IT IS HEREBY ORDERED that the Admiral's motion

16    for summary judgment is GRANTED IN PART.  The Bondholder's cross-motion for partial

17    summary judgment is DENIED.

18

19

20    DATED: August 14, 2009

21                                                                      _____

22                                                                      JEREMY FOGEL
                                                                      United States District Judge

23

24    _____

25    policy renewal should have been disclosed to Admiral because the application required that
      SONICblue "disclose any and all demands, if any, made against or to [the D&O Defendants]"

26    and therefore there was a duty to disclose the "claims and demands raised by…[the 2005
      Noteholders]."  *See* Madden Decl. Ex. 3 at Ex. D ¶¶ 414, 416.  *See also id.* at ¶¶ 422-27 (pre-

27    policy "claims and demands" included claims by 2005 Noteholders that the D&O Defendants
      had breached their fiduciary duties and demand that SONICblue cease sales of UMC stock).

28

Case No. C 07-4185
ORDER GRANTING IN PART PLAINTIFF's MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC1)

1   This Order has been served upon the following persons:

2   Cecily A. Dumas     cdumas@friedumspring.com

3   Daniel Tranen     daniel.tranen@wilsonelser.com

4   Dennis J Connolly     dennis.connolly@alston.com

5   Glenn Philip Zwang     gzwang@bztm.com, pbrown@bztm.com

6   Joanne Madden     joanne.madden@wilsonelser.com

7   Kerry L. Duffy     kduffy@bztm.com

8   Louis Harrison Castoria     louis.castoria@wilsonelser.com, pamela.moran@wilsonelser.com

9   Michael David Abraham     mabraham@bztm.com

10   Reina Grace Minoya     minoyar@wemed.com

11   Robert H. Bunzel     rbunzel@bztm.com, bsage@bztm.com, dsanchez@bztm.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-4185
ORDER GRANTING IN PART PLAINTIFF's MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC1)